**MESSINGER et ux. v. McLEAN et al.**
**(No. 6483.)**

(Court of Civil Appeals of Texas. San Antonio.	Dec. 22, 1920.	Rehearing Denied Jan. 19, 1921.)

**1. Contracts ⟨key⟩245(2) — Antecedent agreements merged in the written contract.**

Generally all antecedent agreements are merged in the written contract.

**2. Receivers ⟨key⟩36—Petition held not to state cause of action for appointment of receiver.**

Petition pleading contract whereby plaintiffs agreed to assist in securing oil and mineral leases to be taken over by a corporation to be organized by plaintiffs and defendants, and whereby defendants agreed that plaintiffs should receive certain amount of stock in such corporation for such services, and alleging that defendants had not formed any corporation, had abandoned the plan to form the corporation, and had disposed of or contracted to dispose of some of the leases, held not to state a cause of action for appointment of a receiver.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by H. N. Messinger and wife against T. A. McLean and another. Judgment for defendants, and plaintiffs appeal. Affirmed.

S. G. Baggett, of San Antonio, for appellants.

W. H. Kennon and H. A. Hirshberg, both of San Antonio, for appellees.

COBBS, J. H. N. Messinger and wife, Florenee Messinger, filed their suit against T. A. McLean and Charles E. Schwab, appellees, for the sole purpose of securing a receiver to take charge of the property (whatever that was), manage and wind it up, and divide and dispose of the proceeds; also for an injunction until the rights of the parties be settled.

In all cases where a receiver is appointed an injunction necessarily follows. So, if the appointment of a receiver be proper in this case, we need not discuss the question of injunction. The only interest, if any, appellants have shown themselves to be entitled to is entirely problematical.

The written agreement, set up in the pleadings as the basis of the contract, was that appellants were to assist in securing leases of land to exploit for the purpose of discovering oil or other minerals, and to compensate them by stock to be delivered to them without cost in an oil company to be formed to prospect for oil.

It was further provided in said agreement it should be null and void if they are not able for any reason to finance it. The amount of stock to be assigned to the appellants, based upon the acreage "assigned to the parties of the first part [appellees] under the original blocking, provided the company be formed and drilling commenced, shall be equal in par value to the sum that $1 per acre bears to the total acreage obtained.

In a supplemental pleading it is alleged that the written agreement did not embrace all the terms, but it was the understanding:

"That the plaintiffs and defendants would enter into a joint enterprise for the purpose of securing and developing oil leases in and around the Mission Espada, Bexar county, Tex.; that the enterprise would be in the nature of a partnership in the venture; that the leases would be obtained and conveyed in trust to T. A. McLean and Charles E. Schwab, the defendants herein; that the said defendants would not sell or dispose of these leases, but would hold them in trust until a company could be formed, and then transfer them to the said company; that a joint-stock company would be formed with a capitalization of not more than $5,000, and that upon such capitalization the plaintiffs would receive stock in said company of par value equal to $1 per acre for all the leases so obtained."

[1] It is not alleged that any terms, through mutual mistake, were left out. The general rule in respect to written contracts is that all antecedent agreements have been embraced and merged in the writing.

The complaint is that the appellees have not formed, nor do they intend to form, any corporation or to issue any stock, and have disposed of or contracted to dispose of some of the leases, and the plan to form a corporation and issue stock has been abandoned; that the value of the leases is problematical, in that if oil be discovered in paying quantities on or around the various leases they would be of very great value. If, then, oil be not so discovered, they would be valueless.

This petition shows that the only interest appellants have is very prospective. That is, they have no interest in the leases until a corporation be formed and stock issued. They do not pray for specific performance or that said parties be required to organize and issue and deliver stock, if, indeed, such remedy were available under the facts in this case. It does not show any value to the supposed stock. While they may have an interest in the leases, there is no allegation or request to establish the same and have it adjudged to them.

There is no prayer for any personal judgment against any one. There is no lien sought to be enforced. There is no pleading to justify a recovery for damages, and there is no way to determine what such problematical damages may be in the future.

[2] If the contract set up is breached because the parties do not organize, issue, and sell stock to promote the company as agreed, or fraudulently sell the leases, not for the purposes of the company, and convert the proceeds to their own use, would give a legal remedy, but does not state a case for the appointment of a receiver.

By passing title to the trustees in the leases, it presupposed it was intended they could sell and dispose of them to secure money for organization purposes. How else could such a proposed corporation be formed without money in hand? There was no provision made in the contract providing for a fund, without which no corporation could be created or stock issued.

It was also alleged and shown by appellees that an effort at development was being made by drilling a well on the property out of proceeds of the sale of the 40 acres of the leased lands complained of, was not done to defraud, but to carry out the plan of development.

The trial court heard the evidence submitted, and very properly denied the receivership. In fact, the pleading itself does not state a case to justify such.

However, as the court made a modified order in respect to continuing the injunction in effect, we will here affirm that portion of the judgment refusing the receivership; in other respects the judgment is reversed and the cause remanded to the trial court for further disposition.

## On Motion for Rehearing.

As a necessary corollary to the matters decided in the opinion, we conclude that this court should have affirmed the judgment as a whole, and our former order reversing and remanding a portion of the judgment is therefore set aside, and the judgment is in all things affirmed.

The motion for a rehearing is overruled.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes